Kenneth R. WEIKER, Applicant
and Appellant,

v.

Herman SOLEM, Warden of the South
Dakota State Penitentiary,
Appellee.

No. 18337.

Supreme Court of South Dakota.
Considered on Briefs
Feb. 15, 1994.

Decided April 27, 1994.

Richard L. Johnson, Sioux Falls, for applicant and appellant.

Mark Barnett, Atty. Gen., Ann C. Meyer, Asst. Atty. Gen., Pierre, for appellee.

AMUNDSON, Justice.

Kenneth Weiker (Weiker) appeals from an Order denying his Application for Writ of Habeas Corpus. We affirm.

## FACTS

On March 22, 1982, State filed an Information. Part I charged Weiker with one count of distribution of hashish, two counts of distribution of cocaine and one count of receiving stolen property. Part II of the Information charged Weiker as a habitual offender.

That same day, Weiker was arraigned on Part I and Part II of the Information by the Honorable Marshall Young. Judge Young fully advised Weiker of his *Boykin* rights. On April 19, 1982, a hearing was held because Weiker claimed that he had a conflict with his court-appointed defense counsel. The alleged conflict arose over a hunger strike Weiker had launched in protest of the jail conditions at the Pennington County Jail. At the hearing, Weiker agreed to proceed to trial with his court-appointed attorney.

On April 22, 1982, a jury found Weiker guilty of one count of distribution of hashish and two counts of distribution of cocaine. The next day, Judge Young arraigned Weiker for a second time on the Part II habitual

offender Information. Weiker was represented by counsel during this second arraignment. The court again advised Weiker of his "legal and constitutional rights" but failed to mention his right to confront the witnesses against him during the Part II trial. Following this advisement, Weiker admitted to three prior felony convictions set forth in Part II of the Information pursuant to a plea agreement with the State.

Of particular interest to this habeas corpus appeal is Weiker's admission at the second arraignment that he was "the same individual that was convicted of third-degree burglary in Minnehaha County on May 8, 1978." The judgment for this conviction stated that Weiker had been arraigned on the information charging him with burglary in the third degree and grand theft and that he had entered a plea of not guilty to those charges. The judgment further states that the case had been brought before the court for a trial upon the stipulated facts of the parties as to Count I, burglary in the third degree. From these stipulated facts, the court determined that Weiker was guilty of burglary in the third degree. The 1978 judgment does not indicate whether Weiker was advised of his right to a jury trial on the charges against him or that he waived his right to a jury trial.

During this 1982 enhancement proceeding, Judge Young took judicial notice of the files and records pertaining to Weiker's prior felony convictions. Judge Young then found Weiker guilty of being a habitual offender and sentenced him to life imprisonment. On appeal, this court affirmed his conviction but remanded for resentencing. *State v. Weiker*, 342 N.W.2d 7 (S.D.1983) (*Weiker I*). On remand, Judge Young resentenced Weiker to three concurrent eighty-year terms in the South Dakota State Penitentiary. On a second direct appeal, Weiker's sentences were affirmed by this court. *State v. Weiker*, 366 N.W.2d 823 (S.D.1985) (*Weiker II*).

On January 28, 1987, Weiker filed an application for writ of habeas corpus. A habeas corpus hearing was held by the Honorable Merton B. Tice, Jr. Following the hearing but prior to his decision, the trial court allowed State to supplement the record over Weiker's objection. State supplemented the record by submitting the March 6, 1978, Transcript of Arraignment and the April 17, 1978, Transcript of Waiver of Jury Trial and Stipulation. Judge Tice entered findings of fact and conclusions of law denying Weiker's writ of habeas corpus on March 29, 1993. Weiker appeals.

## ISSUES

1. Was it proper for the trial court to use Weiker's May 11, 1978, third-degree burglary conviction to enhance his sentence under state and federal constitutional standards?

2. Whether Weiker's double jeopardy rights were violated when the habeas court permitted State to supplement the record to establish that Weiker had been advised of his *Boykin* rights and had waived his right to a jury trial during his 1978 third-degree burglary prosecution in Minnehaha County.

3. Whether Weiker's plea to the habitual offender information was invalid because the trial court did not advise him of his right to confront the witnesses against him in the advisement given at a second arraignment for a Part II habitual offender information.

4. Whether Weiker was denied effective assistance of counsel because his attorney did not object to the use of his May 11, 1978, third-degree burglary conviction in Minnehaha County to enhance his sentence during the April 23, 1982 habitual offender proceedings.

5. Whether Weiker was denied effective assistance of counsel when the trial court refused to appoint another attorney to represent him at a conflict-of-interest hearing.

## STANDARD OF REVIEW

The remedy of post-conviction habeas corpus is restricted by the provisions of SDCL 21–27–16 and the prior decisions of this court. The statutory provisions were fairly well summarized in our decision, *State v. Erickson*, 80 S.D. 639, 129 N.W.2d 712 (1964), wherein we pointed out that,

since the remedy is in the nature of a collateral attack upon a final judgment, the scope of review in habeas corpus proceedings is limited. As we said: 'Habeas corpus can be used only to review (1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights.' *Id.,* 80 S.D. at 645, 129 N.W.2d at 715. *See also Goodroad v. Solem,* 406 N.W.2d 141 (S.D.1987). Habeas corpus is not a remedy to correct irregular procedures, rather, habeas corpus reaches only jurisdictional err. *Id.,* 406 N.W.2d at 143; SDCL 21–27–16. For purposes of habeas corpus, constitutional violations in a criminal case deprive the trial court of jurisdiction. *Goodroad,* 406 N.W.2d at 143; *Podoll v. Solem,* 408 N.W.2d 759 (S.D.1987).... Further, we may not upset the habeas court's findings unless they are clearly erroneous. SDCL 15–6–52(a); *Satter v. Solem,* 422 N.W.2d 425 (S.D.1988).

*McCafferty v. Solem,* 449 N.W.2d 590, 591–92 (S.D.1989), *reh'g denied* January 3, 1990 (*McCafferty III*). *See also Gregory v. Solem,* 449 N.W.2d 827 (S.D.1989).

## DISCUSSION

### Issue 1

Was it proper for the trial court to use Weiker's May 11, 1978, third-degree burglary conviction to enhance his sentence under state and federal constitutional standards?

■ Weiker argues that the May 11, 1978, Minnehaha County judgment was constitutionally infirm and should not have been used to enhance his sentence in 1982. The 1978 burglary conviction came after the State and Weiker submitted the case for a court trial on stipulated facts. Weiker claims the judgment entered after the court trial is constitutionally infirm because the judgment document does not reflect that he waived his right to a jury trial. We disagree.

■ In a habitual offender proceeding the defendant has the initial burden of placing the validity of the prior convictions in issue. *Stuck v. Leapley,* 473 N.W.2d 476, 478 (S.D. 1991). Weiker has failed to successfully challenge the validity of this conviction.

■ It is settled law that a guilty plea cannot stand unless the record indicates that a free and intelligent waiver of the three constitutional rights mentioned in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), was given. However, Weiker has not cited any authority which requires a judgment document reflect that a defendant has waived his constitutional rights when submitting to a court trial on stipulated facts.

Weiker never stipulated that he was guilty of burglary; in fact, he pled not guilty to all three charges brought against him. Weiker and his attorney only signed a document stipulating that certain facts existed for the trial "[c]ourt's determination as to whether [Weiker] is guilty of the crime of Burglary in the third degree." In exchange for this stipulation, State dropped two of the charges brought against Weiker.

A stipulation to facts from which a judge or jury may infer guilt is simply not the same as a stipulation to guilt, or a guilty plea. 'A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment.' *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279 (1969). If the *Boykin* court itself recognized this distinction then we are hardly in a position to ignore it—or to hold that the full *Boykin* protections extend to the circumstance of a stipulation.

*Adams v. Peterson,* 968 F.2d 835, 839 (9th Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 1818, 123 L.Ed.2d 448 (1993).

■ It is clear that a defendant who is only stipulating to facts is not entitled to the full protections that attend a guilty plea. *See Id.; United States v. Robertson,* 698 F.2d 703 (5th Cir.1983); *United States v. Stalder,* 696 F.2d 59 (8th Cir.1982); *Witherspoon v. United States,* 633 F.2d 1247 (6th Cir.1980) *cert. denied,* 450 U.S. 933, 101 S.Ct. 1396, 67

L.Ed.2d 367 (1981); *United States v. Lyons,* 898 F.2d 210 (1st Cir.) (collecting cases), *cert. denied,* 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990); *Lyons v. Pearce,* 298 Or. 569, 694 P.2d 978 (1985). Nevertheless, this record indicates that the trial court painstakingly informed Weiker of his constitutional rights at his arraignment and in a subsequent hearing carefully explained the ramifications of stipulating to the facts for a court trial.[1] Weiker was afforded all constitutional protections even though they were not required. The constitutional integrity of this conviction is not compromised simply because the judgment document does not reflect that Weiker waived his right to a jury trial.

### Issue 2

Whether Weiker's double jeopardy rights were violated when the habeas court permitted State to supplement the record to establish that Weiker had been advised of his *Boykin* rights and had waived his right to a jury trial during his 1978 third-degree burglary prosecution in Minnehaha County.

██ Weiker claims that his double jeopardy rights were violated when the habeas court allowed State to supplement the record, over Weiker's written objection, with the Transcript of Arraignment and a Transcript of Waiver of Jury Trial and Stipulation following the habeas corpus hearing. Our state and federal constitutions prohibit double jeopardy. U.S. Const. amend. V; S.D. Const. art. VI, § 9. The Double Jeopardy Clause protects individuals from (1) successive prosecutions for the same criminal act after acquittal; (2) a second prosecution for the same offense post-conviction; and (3) multiple punishments for the same offense. *State v. Grey Owl,* 316 N.W.2d 801, 803 (S.D.1982).

In support of his argument, Weiker cites *State v. Aspen,* 412 N.W.2d 881 (S.D.1987). The defendant in *Aspen* was convicted of a criminal offense after a jury trial and then admitted his habitual offender status.

Thus, State was not put to its proof of prior convictions at that point in time. The defendant later filed a habeas corpus action challenging, for the first time, the validity of one of the prior convictions that had been used to enhance his sentence. Rather than presenting any evidence of prior convictions to the habeas court, State waived a hearing and agreed to submit the case on briefs. Thus at that stage in the proceedings, the record was devoid of any evidence of prior convictions and the habeas court should have granted the defendant's petition for relief. (Footnote omitted.) Instead, the habeas court honored the State's request to remand the matter to the sentencing court for resentencing. During the resentencing proceeding, State submitted the record of the prior conviction challenged by the defendant in the habeas corpus action. The record established the validity of the conviction. The defendant appealed and, on appeal, we held that the resentencing procedure violated principles of double jeopardy.

*State v. Randen,* 497 N.W.2d 107, 111 (S.D. 1993).

██ This is not the same situation as *Aspen* where the State failed to produce sufficient evidence of a defendant's prior habitual offender status at an enhancement proceeding. *Aspen,* 412 N.W.2d 881. On the contrary, as stated above in Issue 1, the prior convictions were constitutionally valid and properly considered by the trial court in the enhancement proceeding. The trial court took judicial notice of all the records during this enhancement proceeding. In *Alexander v. Solem,* 383 N.W.2d 486, 489 (S.D.1986), this court recognized "that the records in a criminal case are as fully before the court through judicial notice as they would be if introduced into evidence." Therefore, when State submitted the additional transcripts prior to the habeas court's decision it was not given a "second bite of the apple" subjecting Weiker to double jeopardy. *Aspen,* 412 N.W.2d at 884. A habeas court can refer to plea transcripts when determining the validi-

---

1. The transcript of the Waiver of Jury Trial hearing shows that the court asked: "So one of the things you are doing is you are waiving your right to a jury trial, that is you are surrendering that right. Do you understand that?" Weiker answered: "Yes, sir."

ty of prior convictions. *Stuck,* 473 N.W.2d at 480. Weiker's double jeopardy rights were not violated when the State supplemented the record with the transcripts.

*Issue 3*

Whether Weiker's plea to the habitual offender information was invalid because the trial court did not advise him of his right to confront the witnesses against him in a second advisement given at an arraignment for a Part II habitual offender information.

■■■■ Weiker claims that his plea of guilty to the Part II habitual offender information must be set aside and vacated because he was not advised of "his right to confront and cross-examine witnesses against him" during the second arraignment on the habitual offender information held April 23, 1982. As a matter of federal constitutional law, a plea of guilty cannot stand unless the record in some way indicates a free and intelligent waiver by the defendant of his constitutional right to confront and cross-examine witnesses against him, his constitutional right to a trial by jury, and his constitutional privilege against self-incrimination. *Quist v. Leapley,* 486 N.W.2d 265, 267 (S.D. 1992) (citing *Boykin, supra*). South Dakota law also requires a showing that the defendant understood the nature and consequences of his plea. *State v. Robinson,* 469 N.W.2d 376, 378 (S.D.1991) (citing *Nachtigall v. Erickson,* 85 S.D. 122, 178 N.W.2d 198 (1970)).

The record indicates that at Weiker's first arraignment on March 22, 1982, Judge Young advised Weiker of the following rights: (1) A right to a jury trial on the Part II habitual offender information; (2) the right to confront and cross-examine witnesses on the Part II habitual offender information; and (3) the right to remain silent on the Part II habitual offender information. At the second arraignment, Judge Young re-advised Weiker of all his constitutional rights but inadvertently left out the right to confront witnesses against him.[2] Although the

trial court neglected to re-advise Weiker of his right to confrontation, his plea is valid. "The trial court must be able to determine from its own record that the accused has made a free and intelligent waiver of his constitutional rights before a guilty plea is accepted." *State v. Sutton,* 317 N.W.2d 414, 415–16 (S.D.1982).

> This Court ... has held that it is not necessary to re-advise the defendant of his rights immediately prior to pleading guilty if the record shows the defendant had knowledge of his rights and the consequences of his plea when entered, and we have upheld guilty pleas where the same judge informed and canvassed the defendant once, and then later accepted a guilty plea without re-advising the defendant, where the time lapse was five hours, where the time lapse was 26 days, and where the time lapse was 30 days.

*Application of Garritsen,* 376 N.W.2d 575, 577–78 (S.D.1985) (citations omitted). Here, we have the same judge for a second arraignment thirty-days later. Weiker's habitual offender plea was valid.

■■■■ The totality of the circumstances must be considered in determining whether a guilty plea was voluntarily and knowingly entered. *State v. Lashwood,* 384 N.W.2d 319 (S.D.1986). This inquiry often focuses on three specific elements. *Clark v. State,* 294 N.W.2d 916 (S.D.1980). These elements include the defendant's age, prior criminal record, and whether he was represented by counsel. *Id.* (citing *Eagle Thunder v. United States,* 477 F.2d 1326 (8th Cir.1973)).

In this case, the defendant was thirty-one years of age at the time of his guilty plea, he had six prior felony convictions, and was adequately represented by counsel throughout the proceedings. The totality of the circumstances indicate that Weiker "was not functioning blindly within the criminal court system." *Clark,* 294 N.W.2d at 920.

Another factor to consider is the plea agreement entered into by Weiker. At the second arraignment Weiker agreed to admit

---

**2.** The court stated to Weiker at the onset of this re-advisement: "Now under this Information [Part II], Mr. Weiker, you have the same legal

and constitutional rights as I explained to you before when you originally were arraigned on Part Two of the Information."

three prior convictions in exchange for the State's dismissal of two prior offenses on the habitual offender information. The trial court asked: "Mr. Weiker, do you understand what those plea negotiations mean and what they are?" Weiker answered, "Yes." Weiker then went on to admit his three prior convictions.

Weiker received the benefit of his bargain. The two prior convictions were not included in the habitual offender information. "Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763, 773, (1970). *See also State v. Groves*, 473 N.W.2d 456, 460 (S.D.1991) (Miller, C.J., concurring). "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546–47, 81 L.Ed.2d 437, 443 (1984). *See also Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

### Issue 4

Whether Weiker was denied effective assistance of counsel because his attorney did not object to the use of his May 11, 1978, third-degree burglary conviction in Minnehaha County to enhance his sentence during the habitual offender proceedings on April 23, 1982.

This issue will not be addressed, as our resolution of the first issue demonstrates that the May 11, 1978, conviction was properly considered. Under the *Strickland v. Washington* test, Weiker has failed to show that he received ineffective assistance of

counsel. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

### Issue 5

Whether Weiker was denied effective assistance of counsel when the trial court refused to appoint another attorney to represent him at a conflict-of-interest hearing.

■ Weiker argues that he was denied effective assistance of counsel when the trial court refused to appoint another attorney to represent him at a conflict-of-interest hearing. Weiker's argument does not explain the conflict of interest.

A review of the record discloses that prior to the 1982 trial Weiker claimed a conflict of interest arose between him and his court-appointed attorney when Weiker refused to eat in protest of the conditions at the Pennington County Jail. Apparently, this alleged conflict arose because Weiker's court-appointed attorney said he would withdraw as counsel if Weiker did not end the hunger strike before becoming sick.[3] Weiker then contacted friends in an attempt to hire another attorney.

At a scheduled conflict proceeding, the trial court advised Weiker that he could represent himself, hire another attorney, or proceed with his court-appointed attorney's representation. Weiker chose to proceed with his court-appointed attorney's representation during the remainder of the trial proceedings.

■ "To justify a change in counsel, [Weiker] had to show 'good cause.'" *State v. Fender*, 504 N.W.2d 858, 859 (S.D.1993). "A trial court's denial of a request for a change of counsel will not be reversed unless there was an abuse of discretion." *Id.* We find no abuse of discretion in this case and agree with the habeas court's ruling:[4]

---

3. His court-appointed attorney testified: "I then told [Weiker] that the trial was only about four days away. That in the defense of his case he might play a very important role and we certainly couldn't prepare an adequate defense if he was going to be sick and certainly any martyr status wouldn't be to his benefit."

4. We were not able to make a complete assessment of the habeas court's ruling because Weiker did not include a transcript of the habeas proceedings in the settled record of this case. If any presumption is to be drawn from an incomplete record, it is to be that the trial court acted correctly. *Boykin v. Leapley*, 471 N.W.2d 165 (S.D.1991) (citing *State v. Boykin*, 432 N.W.2d 60 (S.D.1988)).

[T]here is no significant conflict that appears in the record between counsel and his client. Nor is there a functional purpose under those circumstances to appoint counsel to represent a defendant who is raising a conflict barring unique circumstances. The trial judge fully advised Mr. Weiker of his rights, thus he was not deprived of adequate representation.

The order denying habeas corpus relief is affirmed.

MILLER, C.J., and HENDERSON and WUEST, JJ., concur.

SABERS, J., concurs specially.

SABERS, Justice (concurring specially).

I concur, except for the dicta on standard of review, for the reasons previously stated in my special writings in *Goodroad, Podoll,* et al.